*Gipe v. State*, No. 515-7-11 Rdcv (Teachout, J., October 2, 2014)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                           **CIVIL DIVISION**
**Rutland Unit**                                          **Docket No. 515-7-11 Rdcv**

**James Gipe, as Administrator of the**
**Estate of Ashley Ellis,**
        **Plaintiff**


        **v.**

**State of Vermont, Vermont Department**
**of Corrections, et al.,**
        **Defendants**


## DECISION
### Defendants' Partial Motions for Summary Judgment


Ashley Ellis's incarceration for a misdemeanor at the Northwest State Correctional Facility in Swanton, Vermont began on August 14, 2009. At the time, she weighed about 90 pounds and looked emaciated. She had symptoms of hypokalemia, meaning a dangerously low potassium level that is associated with eating disorders and can lead to death if untreated. Prior to incarceration, her hypokalemia was managed with a potassium prescription and diet under the care of her physician. The Department of Corrections and the entity with whom it contracted to provide health care to inmates, Corizon, Inc. (formerly known as Prison Health Services, Inc.), were fully aware of Ms. Ellis's condition and its seriousness at the outset of her incarceration. Despite numerous requests by her, and others on her behalf, for her medication and extra food, and amidst indications that her poor health was degrading further, she never was given her potassium medication while in jail. Left completely untreated over her protests, hypokalemia killed Ms. Ellis by the morning of August 16, 2009, a couple of weeks short of her 24th birthday.

Ms. Ellis's estate settled out of court with Corizon, Inc., and then filed this action against the State. The claims in the complaint are as follows: deliberate indifference to Ms. Ellis's serious health needs in violation of the Eighth Amendment (count 1); intentional infliction of emotional distress due to offensive remarks made to Ms. Ellis by corrections officers (count 2); negligent failure to provide health care (count 3); punitive damages in relation to all claims (count 4); and wrongful death (count 5). Defendants have filed two partial motions for summary judgment that, together, address all claims.

When this case was filed, or in anticipation of it, the State sought a defense and indemnity from Corizon pursuant to their contract with regard to all the claims other than intentional infliction of emotional distress, which it recognized was outside the indemnity provision. Corizon took the position that its settlement with Ms. Ellis's estate and the related

covenant not to sue insulated both it and the State defendants, intended third-party beneficiaries of the covenant, from any claims within the scope of the contractual indemnity provision. It thus declined to provide a defense. The State then initiated a declaratory judgment action in the Chittenden civil division, rather than bringing the same claim in this case, to resolve the matter. *State v. Corizon Health, Inc.*, No. 784-7-11 Cncv (Vt. Super. Ct.). The trial court ruled in Corizon's favor. The Supreme Court reversed. *State v. Prison Health Services, Inc.*, 2013 VT 119. Corizon thus provided counsel to defend the State in this case with regard to all substantive counts other than intentional infliction of emotional distress, and has filed a partial motion for summary judgment addressing those claims.[1] The State, through its own counsel, has filed a partial summary judgment motion addressing the emotional distress claim. The State also addressed the Eighth Amendment claim that already had been addressed in the motion filed by the counsel supplied by Corizon.

*All claims other than intentional infliction of emotional distress*

Plaintiff does not oppose the summary judgment motion addressing all claims other than intentional infliction of emotional distress and the Court grants it. It requires brief explanation, however. The motion is based largely on the terms of the covenant not to sue that Ms. Ellis's estate entered into in relation to the settlement with Corizon. The covenant operates, as Defendants assert with Plaintiff's assent, to protect the State defendants from any claims based on the failure to provide health care to Ms. Ellis. The Eighth Amendment, negligence, and wrongful death claims all are based, at least in part, on the failure to provide health care to Ms. Ellis. Plaintiff thus has not opposed this motion.

With regard to the Eighth Amendment claim, there is but one, that agents of the State were deliberately indifferent to Ms. Ellis's serious health needs. This claim *for damages* is brought under 42 U.S.C. § 1983. Neither the State nor state actors in their official capacity are subject to a damages claim under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Assuming they were named in their personal capacities, the only defendants in this case other than the State are the DOC's director of medical services when the underlying events unfolded, the commissioner of corrections, and the superintendent of the facility where Ms. Ellis was incarcerated. There are no allegations with respect to these three individuals that could be related to anything other than the deprivation of health care. There are no other defendants.[2] Granting the summary judgment motion first addressing the Eighth Amendment claim thus disposes of the claim entirely. For that reason, the Court will not address it again even though Defendants raised it in their second motion as well.

---

[1] Punitive damages is framed in the complaint as a separate claim rather than merely as a form of damages. To the extent that the claim for punitive damages derives from the claims for which Corizon has provided a defense, its summary judgment motion extends to punitive damages.

[2] The State raises the lack of any relevant defendant as a basis for summary judgment on the Eighth Amendment claim. It did so, however, for the first time in its reply brief, depriving Plaintiff of a fair opportunity to respond in the context of that motion. The court mentions the lack of any relevant defendant here solely to help show that there is one Eighth Amendment claim—not two—and it was addressed in the summary judgment to which Plaintiff assented.

2

*Intentional infliction of emotional distress*

Plaintiff's emotional distress claim is based on allegations that correctional officers taunted Ms. Ellis by calling her "potassium girl" and making such statements as "potassium girl needs a sandwich." The statements allegedly were made by the guards from whom Ms. Ellis repeatedly sought assistance in getting her medication and extra food. The State disputes that any such statements ever occurred and argues that, even if they did, they amount to nothing more than the sort of mere insults that, as a matter of law, cannot rise to the level of intentional infliction of emotional distress. Plaintiff has come forward with the testimony of an inmate who was present during Ms. Ellis's incarceration and has asserted that such statements were made. For purposes of the State's motion, the Court treats the allegations as true.

The tort of intentional infliction of emotional distress is described in the Restatement (Second) of Torts as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46(1); see *Sheltra v. Smith*, 136 Vt. 472, 475–76 (1978) (adopting § 46 in Vermont).[3] The standard is high. "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community.'" *Denton v. Chittenden Bank*, 163 Vt. 62, 66 (1994) (quoting Restatement § 46 cmt. d). "The court makes the initial determination of whether a jury could reasonably find that the alleged conduct satisfies all the elements of an IIED claim." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395. A plaintiff cannot rely upon his perceptions of the defendant's motives to establish the tort—the test is objective. *Id*. ¶¶ 17, 15; *Baldwin v. Upper Valley Services, Inc.*, 162 Vt. 51, 57 (1994).

In its motion, the State minimizes the gravity of the statements that a jury could reasonably find were made by focusing on the words in the alleged statements, devoid of context. The State contends that merely calling someone "potassium girl" is not inherently extreme and outrageous. Context matters, however, as do the circumstances under which words are said and the knowledge, demeanor, and tone of the speaker. "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face

---

[3] In numerous cases, courts condense the element of extreme and outrageous conduct to simply outrageous conduct. The third Restatement clarifies that these are separate issues.

> The adjectives "extreme" and "outrageous" are used together in a fashion that might suggest that each merely emphasizes the other, rather than serving a distinct role. However, some conduct that may be outrageous—for example, marital infidelity—is sufficiently common that it could not be characterized as extreme (although today it may also not be outrageous). Similarly, some extreme conduct—climbing Mt. Everest, for example—is not outrageous. Thus, this double limitation, "extreme and outrageous," requires both that the character of the conduct be outrageous and that the conduct be sufficiently unusual to be extreme.

Restatement (Third) of Torts: Phys. & Emot. Harm § 45 cmt. d.

of such knowledge, where it would not be so if he did not know." Restatement (Second) of Torts § 46 cmt. f, cited in *Denton*, 163 Vt. at 68.

In this case, the guards were aware that Ms. Ellis was emaciated and in poor health. The guards also were aware that Ms. Ellis repeatedly was asking them for assistance in obtaining her potassium medication and adequate food. It is reasonable to infer that they were aware that she was not receiving her potassium despite the many requests she made for it. In these circumstances, a jury could reasonably infer that Ms. Ellis was unusually susceptible to emotional distress. The jury could further infer, based on its consideration of the evidence as to the demeanor and tone of the officers, that under the circumstances the reference to potassium was a taunt. It could also infer that taunting her with references to the sought-after potassium that presumably would have saved her life was knowingly done as her condition worsened and she progressed toward a life-threatening state. The jury also could reasonably infer that such taunts actually caused emotional distress, even though Ms. Ellis is not here to so testify.

While it is not necessarily the case that trial evidence would support such inferences, this type of evidence cannot be evaluated without witness presentation of details about specific circumstances, tone, and demeanor. The Court cannot conclude that, depending on the exact evidence presented at trial, the jury could not find that the conduct was both extreme in severity and outrageous in character.

The record is not particularly well developed on exactly what may have been said and what all of the circumstances were. It is adequate at present, therefore, to conclude that Plaintiff's intentional infliction of emotional distress claim cannot be decided as a matter of law and should be decided by the jury on the evidence. Summary judgment is not appropriate.

ORDER

For the foregoing reasons, summary judgment is granted to Defendants on all claims other than intentional infliction of emotional distress.

A pretrial status conference will be scheduled with respect to trial of the emotional distress claim.

Dated at this 1st day of October, 2014.

_____
Mary Miles Teachout,
Superior Judge

4